Kissoon v. Wal-Mart All right, Mr. Prisco, am I pronouncing your name correctly? Yes, sir. All right, so you've reserved one minute for rebuttal. Correct. So that gives you nine to begin. You may proceed. Good morning, Michael Prisco for the appellant, and may it please the Court. This Court should reverse and deny respondent summary judgment because there are tribal issues as to the reasonableness of Wal-Mart's response to a known spill, considering all of the circumstances. Per Court of Appeals case law, the standard of care in New York, as it pertains to a duty to maintain and a duty to warn of a dangerous condition, requires the trial court to consider all circumstances, not just time. In other words — But, I mean, the cases involving time are informative, and they all seem to suggest that such short durations like this one are not enough to support a negligence claim. The case law that Wal-Mart relies upon, in particular the Byrd v. Wal-Mart case, I think is distinguishable from the facts of this case. In Byrd, the record suggested only that Wal-Mart may have had notice of the spill, not that it actually did. There was also no indication in that case that the employees of the store had an app like the employees in this case, whereby if they saw the spill, they could stand next to the spill and then summon a cleaning crew or an adequate warning to protect the other customers. I had a fact question. I noted that Wal-Mart says only that, with regard to the employee who did have actual notice, that she moved off camera, not that she left the aisle and was in a position not to warn, whereas you seem to suggest that she left entirely. What does the record establish about her whereabouts? The record establishes that — Or his, I don't know. It is a woman. So the employee that had actual notice spoke with the plaintiff after the spill and told the plaintiff that she had noticed the spill a few minutes before, and then what she did was she asked someone to come and put a warning and asked a cleaning crew. But she first put the towel down. There was someone who took a measure, and part of what I think you're saying is that the reasonableness of that measure and you say that she left the scene so that she was in a position there were a crowd of customers around, the reasonableness of that measure might inform, might be that the quickly passing time might make that enough, and under the circumstances it may be not enough, but if she was still there to warn people, that would suggest to me that Wal-Mart had done a reasonable job in protecting its customers. But the record seems unclear about whether she was present or not. I would agree. If that employee was near the spill where she placed the towel, I would agree the summary judgment would be appropriate to Wal-Mart. But the record, as I read it, I think it is undisputed that this employee left the scene, and no testimony has been produced from that employee who has been identified to indicate otherwise. All indications per video, I think per the testimony, is that all that this employee did was throw the towel down onto this known spill, leave the area, and request by way of radio, I believe, a cleaning crew to come and for someone to place a warning. And under the circumstances and under the case law, well, we need— Can I just—I mean, in terms of case law, are there any cases that involve negligence claims going forward or negligence claims being found where you have such a short duration like this? I think there's cases that this Court can ascertain how the court of appeals would decide this case. So as the Court is sitting in diversity, the court of appeal—the Byrd case is not a court of appeals case. It is— I get that. But this is a one-minute we're really talking about, right? In this case, it's approximately four minutes—five minutes, Your Honor. Well, I mean, the soap gets filled at, like, 144. The customer tries to clean it up, tells a Wal-Mart employee at 148, I thought, and 149 is when the slip takes place. Am I wrong about that? I had in the record that it was just under five minutes. Well, I mean, I think five minutes from when the soap hit the floor, but the key moment is when the Wal-Mart employee learns of it. I think it's—whether it's one minute or five minutes, what needs to be judged is the employee's action that has actual notice at the time. It's not a case where we know the condition was only on the floor for five minutes, and therefore Wal-Mart didn't have a reasonable opportunity to discover this condition on the floor. What happened here is this condition was created by a customer, and almost immediately Wal-Mart is aware of it, and they have the means at that time to stand next to the spill in a busy store on a busy day. It was a Sunday. And to stand next to the spill to make sure that no customers that were going to foreseeably come down the aisle would slip on this condition. They were equipped with an app. They were equipped with a radio. There was no reason for the employee to have to leave the area. So part of the response to your argument that the employee didn't comply with the Wal-Mart standards for how to handle certain elements of this incident is that that doesn't set the standard for negligence in New York, and that given the timeline here, no more need to be taken account of. So what's your response? I mean, surely Wal-Mart can set a very high standard for its employees about how to handle a circumstance, and it makes sense to me that a failure to comply just by itself wouldn't establish that they acted unreasonably. So Wal-Mart's internal rule, it's my position that that comports with the standard of care in New York. The standard of care in New York is that if you're on notice of a dangerous condition, which no one disputes this was a dangerous condition, if you're on notice of a dangerous condition, you must take reasonable efforts to warn of that dangerous condition, and that did not occur here. So we push back against Wal-Mart's position that their internal rule exceeds the standard of care as articulated by the Court of Appeals in New York. And you would say that throwing a red-colored towel down to soak up the spill wasn't enough, that she should have stayed there and warned the customers off. Correct. I think we make the argument that throwing the towel onto the spill potentially makes the condition more dangerous, more of a tripping or a slipping hazard, and we cite it to AP. I didn't see you saying that in the district court, that the towel made it worse. Did you say that in the district court? In the district court, that direct argument was not made, but it corresponds to the argument that you have to look at everything under the totality of the circumstances. What you're suggesting is, I think, in an age of cell phones, that nobody should ever leave a spill unattended because they can call for backup. And so is there anything in the case law that suggests that's the law in New York? There's nothing directly on point, but there is suggestions about that in the case law. For example, we cite to a case Van Alstine, which is an appellate division decision from 2002. In that case, an employee had mopped a particular area, and he gave a warning to the customer not to come in the area where he was mopping. That employee then left the area and the plaintiff thought he was walking in an area different from where the mopping occurred, and he therefore slipped. So the court analyzed under the totality of the circumstances whether that employee's warning was reasonable. Here, the reasonableness of their actions, throwing the towel, leaving the scene, in particular in this day and age where Walmart has an app on every employee's cell phone as part of the record where they can stand guard and summon the cleaning crew or summon the caution wet sign, when you look at all of the circumstances, as the court must, we believe that the court of appeals, if they were hearing this decision, would find that there would be a tribal issue of fact for a jury. And if Your Honors have no further questions, I will reserve our bottle of time. All right. Thank you. We'll now hear from Mr. O'Connor. Good morning, Your Honors. May it please the Court, Joseph O'Connor for the appellees. I think this appeal comes down to three straightforward propositions under well-established New York law, the first of which I think is the most dispositive is this time frame issue that you've been picking up on. There's simply not enough time here as a matter of law. This is one minute. This is 60 seconds. But wait a second. We are, as Judge Sullivan points out, we are in an age of cell phones, and this was a dangerous condition that developed and that someone could have stood guard over. Regardless, I mean, of the number of seconds that passed, someone could have taken more measures and prevented this spill without leaving the scene. Why is the time dispositive? The district court didn't seem to take anything else into account except the passage of time. Why was that correct? I think that's because you can imagine a scenario where you do everything you can to prevent people from spilling on a certain spill. And even within that sort of short time frame, it still wouldn't be enough time to do what you have to do. Well, that's true, but that isn't this case. What's that? Your opponents are arguing that that isn't this case, that it would have been reasonable and a jury should be able to decide whether it was reasonable to leave the scene. But what you're getting into is then upholding to their internal policies and procedures as it relates to safety. No, we're not talking about that. We're not talking about what the internal policies and procedures required. We're talking about, as Judge Sullivan said, in an age of cell phones, you have a dangerous condition. The fact that you could stay there, you had alternatives other than leaving, and the district court seemed to treat just the passage of time, which was admittedly very quick, as dispositive. Why isn't that a jury question? I just think it's a question of reasonableness. I mean, you can expect a defendant to do the measures that you're suggesting, but if there's not enough time to do that, then it might not make a difference. But why was there not enough time to call, to stay there and then call? Well, even if they do call and they call for extra help, extra resources to clean up a certain spill, you can still imagine a situation where a customer keeps walking through there and slips anyway. But that doesn't happen. No, not in this case. But there's no case that has been decided where it would suggest that other reasonable measures should be taken. So the time frame is critical and most dispositive on this issue. Do I have the time frame right? Are we really talking about a minute from when the employee learned of the spill and when the slip and fall happened? It's correct, Judge. All right. And so the record isn't clear as to what exactly the person who saw the spill and threw the towel did or went afterwards. Yeah, the record isn't entirely clear on their exact whereabouts. They make the allegation that they left the area. My interpretation of it isn't exactly that. I don't know exactly where she went. She moves off the view of the camera, but that doesn't mean she necessarily left the area altogether. Well, it doesn't necessarily mean it. It doesn't necessarily mean that she didn't. We don't know. Right. And I'm not sure that it entirely makes all that much of a difference, considering the time frame that we're dealing with here. Moving on to kind of the second point that they're making is, and I think something that we're hitting on, is the Walmart guideline by which they are to guard the spill when they see it. It's been held. I point you to the Byrd case, which is completely on point with this case. They've held that the standard that Walmart sets goes above and beyond the standard. Well, I mean, I guess that's the question, right? So, yeah, Walmart has set a standard. That is not the law for New York.  But it may be that in this instance, that's enough. That, frankly, is what reasonableness would require, nothing less. And so I think you still have to ultimately get back to whether it's reasonable and whether New York has basically a bright line rule that says, I mean, it is not enough. Right, and I think that's a fair question when you consider the time frame element to it, right? So if you're dealing with a thing that is there for 15, 20, 30 minutes, then you can look at the reasonableness of the measures a little bit more closely and say, is this reasonable, is that reasonable? But what if it had been some kind of poison that was really deadly to come near? Right. And we still had the same time frame. Would you still be making the same argument that the time was dispositive? I would. I do think that even—  Yeah. I mean, it seems to me that we're focused, at least I'm focused on time because there are a lot of slip and fall cases that involve time. Right. But if it's poison or if the elevator shaft is out and somebody might go down, if someone doesn't say don't step forward, it seems to me then you're in a different ballgame altogether. You're saying nope, you've got a minute, and if people fall down the shaft, that's life? Well, I think you've got to look at the reasonableness of it. You know, if there's something that you can do that in that exact moment can prevent that thing from happening, then I— Why isn't that a jury question? What's that? Isn't that essentially a jury question about what was reasonable given all the factors? Not according to the district courts and not according to the well-established case law in New York. It's the time frame. You need to afford the defendant a reasonably adequate amount of time to do something about it. If you don't, you can imagine what could happen in a whole slew of slip and fall. You're talking about, though, what was a reasonable amount of time to do something and what actions were—that a defendant could have taken. Yeah. The courts have held, you know, certainly not a minute is enough time. That's my contention here today. If this was a different case where it was, you know, pressing that kind of precedent limit of 15, 20, 30 minutes, then we can have a discussion about the reasonableness of the measures, but in this amount of time frame, it's just not adequate amount of time to reasonably expect someone to do something about it. You're saying that regardless of whether it's poison or an open elevator shaft. If it's a poison situation and there's something that needs to be done imminently to affect— I mean, to prevent harm to others, then I can see why the argument would be made there. But that's not the situation we're dealing with here. This is a sudden transient condition that's created by a customer that Walmart just learned of a minute before an accident happened. Well, it seems to me what the real argument is that this is not a high-tech problem and not a— I mean, this is the sort of thing stuff from grocery stores and stores falls in the hallways and aisles all the time, and so this is not that new from prior—30 years ago, 50 years ago. The prior cases are not that big a deal. Does cell phones change that? I guess that's the question. Do radios change these things in terms of what's reasonable? I don't think so, Judge. I think we've seen a lot of cases where Walmart can adhere to their guidelines of guarding it, calling someone for extra help, and they still can't prevent these accidents from happening. People will still walk through these conditions. That's why the time frame element is so crucial here because it's all about reasonableness. It's all about giving them an adequate amount of time to deal with the situation. The last point I'd like to make is the argument that by putting the towel down in some way made the condition more dangerous. As you noted, that argument was not made in the district courts, and it's our position that that argument's been waived here. Well, there's no question that the towel was put down, right? Right. The issue is whether it made it worse. That argument wasn't made below. Correct, and to the extent you consider it for the purpose of this appeal, my only point on that is there's no facts, evidence, testimony, anything in the record that would support that allegation. It's kind of just a creative argument that plaintiff's attorneys have made in their briefs, but it just allows for jury speculation if it's allowed to go forward because there's no evidence that the plaintiff saw any towel on the floor. She didn't see anything on the floor except for the white soapy substance. There's no evidence that it obscured her vision of the spill or anything of that nature. Look, I don't think it's worth getting into it. Sure. It's a concession that the argument wasn't made below, but it seems to me the question is whether learning of a spill, throwing down a towel, and then leaving the area for a minute is reasonable under the law, whether any reasonable fact finder could conclude other than that's reasonable. That's really the question, right?  And so your view is in New York, the law is clear. That's reasonable just by virtue of the amount of time. That's correct. And the type of risk. Yes. Okay. And with that, I'll rest on my papers. All right. Okay. Mr. Crisco, you have a minute for rebuttal. I just want to address first whether or not there's a bright line rule as to reasonableness in New York. There is not. I bring the Court's attention back to the Van Alstine case 739, NYS 2D 763 from 2002, and I quote in the holding denying summary judgment there, What safety precautions may reasonably be required of a landowner is almost always a question for a jury, and the question of what, if any, warning is reasonable under the circumstances is usually a question for a jury. So maybe you could add to that. No, please. In light of the type of risk here, which is a very ordinary one in a grocery store where things spill and there are children with sippy cups, why even taking into account all of the circumstances, what do you point to that was unreasonable about what Walmart did in this very short time frame after learning of the risk? I think if you look in the particular circumstances, you have a store and you have a spill that the store knows about. And as part of the record, the defendant's witness testified this is a Sunday that's usually their busier day. So just like the poison analogy, there's an immediate need here to do something to protect the customers that are in the store because they know there is a dangerous condition and that there is a strong foreseeable likelihood that someone could slip and fall. And just because a slip and fall accident perhaps could result in less severe of an injury than falling into, say, an elevator shift, doesn't make the fact that there's a strong, imminent, and particular need to protect the customers in the store any different in those situations. But it seems to me then you're saying that even if it had been five seconds, that would have been still then a jury question, right? You're saying that if the employee had just turned his head or her head for ten seconds and somebody slipped, that would be a jury question? I would actually change my mind on that, Your Honor. So in other words, if the employee saw the slip, the condition on the floor, and in the moments of turning away to maybe someone's help, the slip and fall happened. Under those circumstances, again, we need to look at all of the circumstances. I would agree with Your Honor there that there would be no breach of duty of the standard of care. But here it is different. There is enough lapse of time where the employee was given the opportunity to slip, right? It was a minute, Your Honor. And I would like to – I apologize. It wasn't intentional to say four minutes. I misread the record. It was four minutes from spill to slip, but that's not really relevant. It's from employee knowledge to slip. Correct. And I think under the circumstances here, that enough time from the minute of employee knowledge to slip, if what would have happened was the employee would have left to get the rag, and while she was coming back to put the rag down, the slip happened, I think you would have perhaps a different case. But wait a minute. I thought you were saying just leaving the scene was going to be unreasonable. So it seemed to me that your argument before was that reasonableness requires a person to stay there warning people as though the bridge is out, and you can't even leave to go get a mop. You need to call 911. And that's not my position. Perhaps I didn't articulate it correctly. If the employee has the means to immediately address this condition, which would require the employee for a second or two to turn their attention away from the spill so that they could clean and address the spill, I think that would be proper. But here it is different. What the employee did was not go leave the scene for a couple of seconds so that the harm could be immediately addressed. What happened was the employee put a Band-Aid on this imminent, foreseeable, slippery condition that could harm someone, and then left the scene, subjecting the customers to a potentially dangerous condition. It's under those circumstances that I think they had enough time, and it would be That's your point, right? Leaving the scene was unreasonable. Under these circumstances, leaving the scene is unreasonable. Leaving the scene because you have a mop just to your right for a second to grab the mop and clean up would not be unreasonable. But leaving it here in the way that the employee did is unreasonable because they could have summoned the cleaning crew or the warning cone while standing guard in the aisle. All right. Thank you. Well, we will reserve decision. Thank you both. Thank you.